# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **RHONDA V. CLARK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00051 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Anne von Scheven, Assistant Regional Counsel, Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Rhonda Clark filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Clark filed for benefits in 2007, alleging she became disabled in 2002, due to bipolar disorder. Her claim was denied initially and upon reconsideration. Clark received a hearing before an administrative law judge ("ALJ"), during which Clark, represented by counsel, and a vocational expert testified. The ALJ denied Clark's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Clark then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Clark was 47 years old when she filed for benefits, making her a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Clark has a high school education. She has worked in the past as a drill press operator, woodworking machine operator, and sanding machine operator at a furniture factory from 1978 to 2002. In 2002, the factory closed and she was laid off.

In 2001, Clark complained to her doctor about work stress and irritability. She was prescribed Zoloft for depression and anxiety. In 2004, her doctor noted that her mood was good and that she continued long-term management of

depression and anxiety but was not following up with a psychiatrist. Clark also complained about migraines.

In March 2006, Clark began receiving treatment from Delano W. Bolter, Ph.D., a psychiatrist. She complained of frequent irritability, anger, insomnia, mood swings, fatigue, and a racing mind. Dr. Bolter diagnosed her with moderate bipolar disorder. He prescribed Topamax for migraine headaches and Trazodone and psychotherapy to treat her mental symptoms. In April 2006, she reported doing better and feeling less irritable, but she was prescribed Celexa, an antidepressant. In May 2006 and July 2006, her Trazodone dosage was increased. In December 2006, she was reasonably stable but continued to report feelings of stress related to family issues.

In June 2007, Dr. Bolter changed Clark's antidepressant to Cymbalta. In September 2007, she reported doing better on the new medication. In December 2007 and March 2008, her mood was stable. In June 2008, Clark reported walking a mile a day and was having no significant side effects from her medication. Dr. Bolter increased her Cymbalta dosage. In July 2008, Clark reported stress and conflict regarding family issues, but Dr. Bolter continued to find that the prescribed treatment was effective.

Based on his initial examination of Clark in March 2006, Dr. Bolter determined that Clark had fair to poor abilities in all areas of making occupational

adjustment. In September 2008 and July 2009, Dr. Bolter completed assessments of Clark's work-related mental abilities. In both assessments, he opined that Clark had poor to no ability to deal with work stresses and maintain attention and concentration; had fair to poor ability to relate to co-workers, deal with the public, interact with supervisors, carry out job instructions, and demonstrate reliability; and had good to fair ability to follow rules, use judgment, and maintain personal appearance. He attributed Clark's limited ability to concentrate to her mood swings, irritability, insomnia, fatigue, and agitation.

Since 2008, Clark has begun taking Levoxyl for thyroid hormone replacement therapy and reported having more energy on that medication. In December 2008, it was noted that Clark had not had a migraine in about two years.

Two state agency psychologists reviewed Clark's records. They concluded that Clark had no significant limitations in several areas. She had, at most, moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workweek without psychological interruptions, interact with the general public, get along with co-workers or peers, maintain socially appropriate behavior, respond to changes in a work setting, and set realistic goals.

Gary T. Bennett, Ph.D., a licensed clinical psychologist, testified at the administrative hearing as a medical expert. He testified that, based on his review of the medical evidence, Clark likely has bipolar disorder but that the condition did not meet or equal a listed impairment. He testified that Clark appeared to be stable and was doing well on medication. He characterized Clark's impairment as moderate based on her activities of daily living and her treatment record.

After reviewing Clark's records, the ALJ determined that she had severe impairments of bipolar disorder and hypertension but that neither of these conditions, either alone or in combination, met or medically equaled a listed impairment. The ALJ also recognized that Clark suffered from hyperlipidemia, migraines, a digestive disorder, and diabetes but found that none of those conditions were severe. Taking into account Clark's limitations, the ALJ determined that Clark retained the residual functional capacity to perform work that required only simple, routine tasks and minimal social interaction.

Donald Anderson, Ed.D., a vocational expert, testified that Clark's past relevant work as a boring machine operator and a woodworking machine operator was unskilled, medium work and that her job as a machine sander was semi-skilled, medium work. In response to a question about transferability, Dr. Anderson testified that Clark's skills were not transferable to other jobs at the light or sedentary exertional level. He then stated that Clark would be unable to perform

her past work and that there was no work to which her skills would transfer. Nevertheless, the ALJ concluded that Clark was able to perform her past relevant work and was therefore not disabled under the Act.

Clark argues the ALJ's decision is not supported by substantial evidence because the evidence about Clark's nonexertional impairments was not fully developed and because the ALJ substituted his medical opinion for the opinions of health professionals. For the reasons below, I affirm the final decision of the Commissioner.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d) (2) (A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has

a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinbarger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is

not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Clark first argues that there are gaps in the record relating to Clark's nonexertional impairments and therefore she was denied the fair and adequate hearing to which she was entitled under 20 C.F.R. § 404.944 (2010). Clark presented complete medical records from numerous physicians. The ALJ considered all of the medical evidence presented by Clark, read the reports of two reviewing physicians, and heard testimony from Clark, a medical expert, and a vocational expert. Clark has not identified material evidence that was missing at the hearing and has not presented new material evidence that should be considered. Therefore, Clark's argument has no merit.

Clark also argues that the ALJ improperly discounted the assessments prepared by Dr. Bolter. A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). In the present case, the ALJ found that Dr. Bolter's assessments were inconsistent with his treatment records and with Clark's complaints. His

notes showed that Clark's condition was stable and that her medication was effective. Clark reported feeling worse only when she had family problems, which is consistent with situational depression, generally a mild condition. Therefore, Dr. Bolter's assessments were afforded no weight.

There is substantial evidence to support discounting Dr. Bolter's assessments. The ALJ properly determined that Dr. Bolter's notes and the course of treatment did not support the severe limitations Dr. Bolter outlined in the assessments. Furthermore, other evidence before the ALJ conflicts with Dr. Bolter's assessments. Particularly, the state agency physicians who reviewed Clark's medical records disagreed with Dr. Bolter's assessments and found only moderate limitations. Contrary to Clark's assertions, the ALJ's did not find that Clark does not have any serious limitations. Rather, the ALJ found that, based on the medical evidence presented, Clark has limitations but that those limitations were not as severe as indicated in Dr. Bolter's assessments.

Clark also argues that the ALJ erred in his consideration of Clark's activities of daily living. Clark testified that she does not go to church or family gatherings and that her husband usually does the shopping, although sometimes she will go with him. A typical day in 2007 would include getting up at 10 or 11 in the morning, eating breakfast, feeding the cat, watching television, and cooking supper. Clark did some cleaning. Relying in part on the testimony of medical

-9-

Case 1:10-cv-00051-JPJ-PMS   Document 18   Filed 08/17/11   Page 9 of 11   Pageid#: 742

expert Dr. Bennett, the ALJ determined that Clark's activities of daily living were mildly restricted. The finding appears consistent with the evidence presented and is not inconsistent with the accepted diagnosis of bipolar disorder. The ALJ did not err by concluding that Clark did not have marked restriction in her activities of daily living.

Although Dr. Anderson, the vocational expert, briefly testified that Clark could not perform her past relevant work, he did not explain the basis for his decision. The ALJ is not bound by the opinion of the vocational expert. *See Goodman v. Apfel*, No. 97-1361, 1998 WL 120148 at *4 (4th Cir. Mar. 18, 1998) (unpublished). The ALJ properly relied on evidence from other experts and on Clark's medical history for his determination that Clark could perform her past work.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 17, 2011

/s/  James P. Jones
United States District Judge